Tucker Sandler representing Sedle Warku, the petitioner in this case. Well, if you're going to speak that softly, I'll put this on. But if you speak up, I can hear you well. Okay, I'll do that, Your Honor. Well, this case is about, basically the facts are not in dispute. This lady was arrested three times, tortured. Her brother, her twin brother was killed. Persecution is not an issue. The government doesn't have an issue with that. The issue is about what the judge did in this case with respect to discretion. The judge denied this lady relief because she was a member of an organization called OLF. And there's a, in the record, there's a mention in the country report that OLF planted landmines and civilians were killed. But she didn't know anything about it, and he, the IJ, determined that she did not know anything about it. Right. He had no knowledge about it. Yes. So it was kind of an odd conclusion that he came to. It's different from the Colubi case, which is a case that is in both counsel's briefs. In Colubi, that alien had voluntarily joined this group and continued to participate with knowledge. Let me ask you a preliminary question. You're now attacking the discretion. The administrative judge said she was a member. I don't know. Is this a woman? Yes, it's a lady. Yeah. She was a member of this group that planted mines. And even though she didn't do it, as a matter of discretion, I won't give her asylum. Now, your opponent says you never raised that, and the matter of discretion was not raised, and so we shouldn't reach it. Now, what was the discretion based on? What was the reason the judge said no asylum? Because the judge engaged in an analysis that because this lady belonged to an organization that planted landmines, regardless of her knowledge. I understand that. Now, did you attack that in your brief? I believe I did, Your Honor. How did you do that? You never mentioned this abuse of discretion, as I understand it. I concede, Your Honor, that I didn't do a good job in doing that, but it would be a shame for the government to prevail simply because I didn't do a significant Well, I'm trying to help you, not hurt you. I'm asking you if you would There are three-way areas where they're wavered, where there are exceptions to that. Okay. Do you know about that? Well, are we talking about Well, what I understand is that the government had an opportunity to brief the issue. The government wasn't prejudiced. I was able to cite the key case on discretion. The Kaloubi case was cited in the opening brief, and, yes, I did harp on the statutory eligibility issue. However, my understanding that the standard of review of the Attorney General's discretionary judgment whether to grant asylum shall be conclusive unless manifestly contrary to the law and an abuse of discretion. That's 8 U.S.C. section 1252, small b, for capital D. So, Your Honor, I would say that you still have to go through an analysis of whether the judge followed the law in a discretion What you're saying is if the judge didn't follow the law, it automatically you attacked the judge's ruling it was an abuse of discretion? Is that what you're saying? Part of, yes, Your Honor. Part of an abuse of discretion analysis also entails to determine whether or not the judge followed the law. What law didn't he follow? I mean, as I understand it, he has discretion, administrative discretion, if based on any reasonable fact. Okay. There's a woman who says that she was engaged in fundraising and belonging to an organization which the State Department tells us plants landmines and kills people in a terroristic way. She says, I didn't know they were doing that. And she's believed there's a positive credibility finding, not an adverse credibility finding. So we have to take that to be true, that she didn't know that. But the IJ says whether she knew it or not, we are not going to allow her to stay in this country because she raises funds for a terrorist organization. She may be what the Leninists used to call useful fools, but she shouldn't stay in this country. Now, if that's his reasoning, what's wrong with it? Well, what's wrong with it, Your Honor? And I didn't do this in the proper order, but I would like to reserve two minutes for rebuttal, if I can still do that now. But what the judge did was he didn't engage in a discretion and balancing test under the weighing the positives and the negatives. Kaluubi is, again, the case that we both cited. It requires a full analysis of the positives and the negatives. All this judge did, first of all, I'd like to bring up a very important point. In the record on page 185 and 86, before the judge makes a decision, the judge tips his hand and lets us know where he's headed. He said, I'd like to know more about the OLF for this reason, because if I conclude that she is, I'm inclined to at this point. If the OLF is, in fact, a terrorist organization, I'm going to deny it as a matter of discretion. But if it's not, then I think she deserves a grant of asylum. And nowhere in the record will you see that this organization is a member of the terrorist organization. Several times the case was continued. It was reset to give the trial attorney an opportunity to show that the OLF was a terrorist organization, and it was shown that it was not. I'd like to reserve my two minutes, but I also want to answer your question, so I'm going to just stop right here. Well, you know, Judge Bright raised a very important issue. I mean, you did raise the issue about the discretion of the immigration judge in the – well, it was raised in the appellee's brief. Is that right? Yes, the standard was raised. The petitioner did raise it in the petition for review, and the standard was articulated in the government's brief. There's no doubt about that. And you're also arguing that the IJ has to state his reasons and show proper consideration of all factors when weighing the equities and denying relief. That's another argument you've made. Is that right? Yes, Your Honor. Okay. And the IJ must explain sufficiently how each factor figures in the balance so the court can determine that the factor has been heard and considered and decided. So you're relying on that statement as well? Yes. All right. Okay. Have a seat. Thank you. You did raise that issue in your brief. May it please the Court? What issue, Your Honor? The one we've been talking about. Yes, Your Honor. We raised the exhaustion issue, and we also raised the issue regarding the abuse of discretion of the immigration judge. Okay. That's in pages, I think it was, what, 9 to 19 of your brief? Yes, Your Honor. It was the last section of the brief, section 2 of the brief. All right. Your Honor, I am Edward Duffy, and I represent the Attorney General. The IJ in this case granted relief to the petitioner in the form of withholding of removal. I know. Therefore, she's not going anywhere unless conditions improve greatly in Ethiopia, and she's no longer subject to a potential for persecution. Well, that's true. She's not going anywhere, but she can't be a citizen, and she can't apply for asylum here. Well, she can't. She cannot apply for lawful permanent residence, and her path to citizenship with the denial of asylum is barred unless she finds another way to adjust her status in the United States. Now, you raised in your brief that the matter of discretion by the immigration judge was not raised. Are you still maintaining that position? Well, Your Honor, it's our position that at the time we wrote our first response brief, it had not been the discretionary decision had not been attacked by a petitioner in our opening brief. This Court's decision in Muvazian says that the Court may waive that waiver argument if it finds that it would either result in a manifest injustice or in a case like this where we are not prejudiced because we raised the issue in our brief. However — Well, are you claiming no — are you now claiming that the discretion is not reviewable by us, or are you saying we can review it if we want to? Your Honor, it's still our claim that because they didn't raise the issue in the opening brief that the matter of discretion was waived by a petitioner. However, the Court is free to find that since we addressed it, and if we adequately addressed it without any arguments to answer, and that's where we're prejudiced. We have no idea when we write the response brief what arguments Petitioner is going to make, because in the brief below, Petitioner didn't — in the brief before the BIA, Petitioner did not make very many discretionary arguments, although they did raise the issue before the BIA. But they did — and they did talk about discretion, but it was not a full vetting of the — of the discretionary determination. So we basically looked at — the U.S. attorney in this case looked at the discretionary decision and made the best argument they could make without any counterarguments on the side. Do you think you are — the matter of discretion here is fully ventilated and you're not prejudiced? Is there anything more you want to say to protect the I.J.'s exercise of discretion? As I understand it, basically, what your opponent is saying is that it was an abuse of discretion for the I.J. to say just because she belonged to this organization and she didn't participate, that was not enough to deny her asylum. Your Honor, it wasn't — the I.J.'s decision is not that she just belonged to an organization. Well, then, now you're defending a discretion. Defending discretionary decision, yes, Your Honor. You're saying it's not that she belonged to the organization. She gave funds to the organization, and you're claiming the organization is a terrorist-type organization? Well, as counsel correctly points out, the organization is not listed in the State 12, 3B, Roman numeral 6, small Roman numeral 6, Roman numeral 1 or 2. It's not listed as those. However, it's the — and there is no finding in this case that it qualifies as a terrorist organization under Roman numeral 3. And those terrorist bars are not implicated in this case at all. What this is is a matter of discretion by the immigration judge looking at the organization itself and making a determination whether or not this organization is a good or bad organization and what her activities were in support of that organization. And in this case, this was not somebody who casually contributed to an organization. This was somebody who believed in what this organization was doing. Based on what happened to her brother, she got heavily involved in the Aroma Liberation Front. She raised funds for them. She worked for the leaders of the organization. And at that point, what the immigration judge is saying is someone who goes into an organization and works hard for an organization like this, even though they don't know exactly what they're doing, there's a — there's almost a duty of care on their part, if they're going to work for an organization like that, to know what the organization is doing. In other words, you're saying there's sort of a guilt by association? Not guilt by association, Your Honor. It's more of a — I hate to use — I hate to bring the criminal law into this. I hate to use a Pankerton type. But it's more a duty of care on the part of the individual that's working for the organization. Because what the judge says that the acts of the organization itself — Well, I mean, you know, if our country commits certain misdeeds abroad, you understand what I'm saying? I understand what you're saying, Your Honor. I'm responsible for it. No, Your Honor. You're not. I have to pay the consequences for it. You're not, Your Honor. What this is, is this is an organization that — You have this poor woman here whose brother was killed and she was raped and imprisoned and tortured and all that, and she joins this organization and reportedly used landmines. It's not a terrorist organization. She says she knew nothing about that. I mean — I mean, we're talking about a rather primitive area of the world, aren't we? Your Honor, but this — Aren't we talking about a primitive area of the world? We're talking about a primitive area of the world. It's not like you can — there's mass communication and, you know, you're sort of supposed to know what's going on all over. And the I.J. finds that she didn't know anything about this. She said that, and he believed her. That's right, Your Honor. So isn't it a little odd that he then turns around and denies her asylum just because she had a connection with this organization? No, Your Honor, because what the immigration judge is saying is that if — again, because the organization's activities in other areas were repugnant, and that's the language used by the immigration judge, that he was going to deny asylum as a matter of discretion because of the intensity of her activities for the organization. Now, he — the judge believed her. The judge absolutely believed that she did not know that the organization laid landmines. However, you know, using the concept in criminal law of knowing ignorance or just — but I don't even want to go that far, Your Honor. It's more of a lack of understanding of what the organization you are helping is really up to. Yeah, but that's your argument, and it's a good argument. Well, I didn't see that argument and that view expressed by the administrative law judge. He just said she belongs to this organization. The organization has been guilty of planting landmines, and therefore she — as a matter of discretion, I'm not going to let her get asylum. So the alternative is, suppose the administrative judge said, I'm going to grant her asylum. Could the government have attacked that as saying that was an abuse of discretion? It seems to me that it's almost a legal issue. Your Honor, if the immigration judge — obviously, if the immigration judge had granted asylum as a matter of discretion, obviously we would not be here at this point. Are you in this case? And I doubt that it would have been appealed to the BIA by the trial counsel, by the department. Here's what I'm trying to get at. The facts are not in dispute. The administrative judge said this organization has laid landmines, and this woman didn't know anything about it, although she was a member. Now, that's almost as a matter of law. Either she's disqualified because of the organization membership for asylum, or it doesn't make any difference. That's one of the problems I have with this case. Well, Your Honor, that's because the bars to withholding of removal and asylum were not raised in this case. They were not raised. The immigration judge, as counsel correctly points out, asked for information, more information about the organization to see if it was listed as a terrorist organization, and it is not because it does not affect the interests of the United States, and that's what the State Department focuses on when it's designating terrorist organizations. But what the immigration judge did find was that this organization engages in repugnant acts, and that her – that to fund – the language that we're focusing on here is to fund, to seek, to recruit an organization, say, foreign organization, and to not be held responsible for the consequences of those funds when it does appear to be that the acts of – when it does not appear to be acts of individual renegades, it does appear to be acts of the organization. And, Judge Pregerson, that distinguishes your comment about are we responsible for something that renegades in the United States who break our laws do overseas. You know, perhaps they do overseas. Here the judge was focusing on the fact that this was part of the organization itself. These – there's never been a disavowalment by the OLF of any of these activities, according to State Department reports. Well, look, I mean, doesn't the IJ have to engage in the – consider various factors and balance them? Isn't that required? Yes, Your Honor. There are a lot of big things over here that she went through – imprisonment, torture, rape, and all the rest of it. And isn't he required to do a balancing? He thinks about that and what this woman's been through, and then he thinks about, well, this organization puts out landmines and she supports that organization. Yes, she doesn't know anything about it. And – but he's got to engage in a balance, right? Your Honor, it – I mean, isn't that right? Absolutely correct, Your Honor. He has to engage in balance. I'm citing my own case. Okay. So he didn't do that, did he? Well, I think if you read the decision as a whole, he did do that. He did do that by granting – first of all, granting withholding of removal. He recognizes what she went through. By the – that is – those facts are undisputed. They're – she was found credible. And because – and that also, as the analysis goes in Kalubi, as the Court has stated, once withholding of removal is granted, then, of course, the balance as far as whether the individual will suffer torture is no longer an issue in the case. That goes away. So then the balance becomes a little easier for the immigration judge as to whether or not to grant asylum, because the person is indeed protected from any future persecution because they are not returning to Ethiopia unless conditions vastly improve there. And that's – that's what – that's why this exercise of discretion is proper in this case, and that's why the judge balanced all the issues. He did find her statutorily eligible. He did give her withholding of removal. That's correct, Your Honor. And he did consider one adverse factor to it, the OLF landmine policy, and that she was a fundraiser in that organization. And that she engaged – engaged in a lot of activity for that organization. So for the reason stated, the Court should uphold the decision of the BIA and the immigration judge and deny the petition for review. Where is she now? She's in Los Angeles. All right. Thank you. I have a question to ask you on rebuttal, Counsel. What specific factors do you claim the IJ should have considered in the balancing process, which my brother Pragerson has mentioned, and that the IJ did not consider? Your Honor, what – the judge didn't talk about the human rights record of Ethiopia in general. The record on page 238 talks about that the human rights record in Ethiopia is poor. Also on that same country report on page 238 talks about the government continued to detain people sympathizing with or being members of the OLF. On page 240 – But didn't he consider both those factors in granting her withholding of removal? Simply, Your Honor, simply saying that, well, he balanced because he granted her withholding, I think that's like splitting the baby. He really – he tried to make an equitable decision, but what he didn't do, he didn't look at asylum and really balanced those factors in Kulubi. He didn't look to the fact that OLF was one of many groups in Ethiopia, including the government that was planting landmines. You're dealing with a rogue-type element. And based purely on what the judge calls repugnant, his standard is what he deems repugnant. And it's a – on a public policy level, I think that's a dangerous road to go down because what one judge deems repugnant, another one wouldn't, and it's just a slippery slope. So the factors he should have considered which he didn't consider was, one, the human rights situation in Ethiopia, that the government continues to persecute this tribe, and that the OLF is only one of several groups planting bombs. And you say he didn't consider that in arriving at asylum, although he did probably consider them sufficiently in arriving at withholding of removal because he granted withholding of removal. Or should he – those are not factors to be considered. No. When you're talking about withholding, it's not a discretionary type of form of relief, as far as I understand it. When you're talking about asylum, there is that additional discretion. But what the judge did was he took this one. He made an if-then analysis. If you've got an organization – and regardless – I mean, he asked several times, is this a terrorist organization? That answer came up negative because there was – several times the trial attorney had an opportunity to present the evidence and it never showed up in court. And it's absent from the record. So I would have – if we could articulate what I would like the judge to balance, balance the extreme events that this lady experienced, balance the context of the environment that this lady was living in. All that goes to future persecution, and he found that it was more likely than not in withholding of removal that she was going to be persecuted. No question about that. That's even a tougher test than asylum, which is only 10 percent of the possibility. So he considered all those matters in coming to withholding of removal. He just didn't come to the same conclusion as to asylum because of the weight he gave her membership in a landmine-planting organization. And you say that's an abuse of discretion. Yes, it's one negative factor versus several positives. So all factors have to be equal balancing? No, I'm not saying that, Your Honor. I think we have to look at the totality of the circumstances like under Pula. I'm not saying one factor, you know, we give equal – I mean, it's not a number – we're not keeping score here. Just look at the totality of the circumstances. I thought that at excerpt of Record 38, the last two paragraphs of the IJ's opinion, he was very clear that he was making this determination as a matter of discretion because of the landmine usage as found by the State Department and her membership and fundraising organizations in the organization. That was not sufficient consideration of the basis for his discretion? Well, looking specifically at his decision in the exact area that Your Honor is talking about, he says, though Respondent is personally unaware that landmines may have been laid, the Court finds her involvement with an organization that does lay landmines, I believe, makes her nonetheless responsible for actions of an organization. It begs the question, why? A fundraiser for Al-Qaeda may be responsible for the actions of Al-Qaeda. You don't have to dispute that, do you? No, Your Honor. But that's a terrorist organization, and this hasn't been listed as a terrorist organization. That's one big distinction. If that logic applies, then it would seem that somebody who raises funds for not a terrorist organization but only one that puts landmines up could be responsible morally for some of the damage done by the landmines even without knowledge of what's going on with the landmines. Isn't that what he's saying? Funds to seek to recruit an organization and then not to be held responsible for the consequences of those funds when it does appear to be not the acts of an individual renegade but it does appear to be the acts of an organization I believe are attributable to its active member. Is that an abuse of discretion? Yes, Your Honor. And it is because he didn't also recite some other factors such as those you've given me at the same time and say this outweighs those other factors. That certainly would have been... Okay. I think we've got your point. Thank you. All right. All right, the matter will stand submitted. And we'll go to the next matter. U.S. versus the Sonics. The Court is adjourned.
judges: Bright, Pregerson, Bea